LOLLEY, J.
(rIn this medical malpractice case, plaintiff, Kimberly Jimerson, appeals a judgment from the First Judicial District Court, Parish of Caddo, State of Louisiana, wherein the trial court sustained a peremptory exception of prescription in favor of defendant, Jake Majors, M.D. For the following reasons we affirm the judgment of the trial court.
FACTS
Kimberly Jimerson was under the care of Dr. Jake Majors for obstetrics and gynecology treatment since 2005. She was diagnosed with endometriosis with biopsy-proven pathology obtained by laparoscopy on August 8, 2005. Dr. Majors referred Jimerson to an infertility specialist in 2005 due to problems with oligomennorrhea (i.e., infrequent menstruation), endome-triosis, pelvic pain, and desired conception. Having had two successful Cesarean births, Jimerson elected to undergo a bilateral tubal sterilization, which prevents future pregnancy by blocking the fallopian tubes. The procedure was performed May 22, 2007. Jimerson continued to complain to Dr. Majors of pelvic pain, even after her sterilization surgery.
On August 18, 2008, after presenting in the emergency room, Jimerson, then 24 years old, was admitted to the hospital for pelvic pain. According to Jimerson she signed a consent form for surgery while in pain and under the influence of pain medication. The next day, Dr. Majors performed a hysterectomy including removal of the fallopian tubes and ovaries. Post-surgery, Jimerson developed complications, specifically, bladder issues. Jimerson continued treatment with Dr. Majors until October 13, 2009, but in an attempt to determine the cause of her pelvic pain, she was also treated by numerous other doctors and specialists during that time.
|2On November 10, 2009, Jimersón had an office visit with Dr. Joseph Pineda, another specialist in obstetrics and gynecology. Jimerson claims that during this office visit Dr. Pineda informed her, in his opinion, it was “negligent for Dr. Majors to perform a hysterectomy on a 24-year-old woman.” On September 2, 2010, more than two years after the hysterectomy was performed, Jimerson filed a complaint against Dr. Majors requesting a medical review panel (“MRP”) to review her claim. Dr. Majors filed a peremptory exception of prescription in the trial court, which declined, to rule on the exception while the matter was pending before the MRP. Jim-erson failed to submit the requested materials to the MRP for over three years— missing six reset deadlines. In May 2014, Dr. Majors-submitted his materials to the MRP in order to proceed with the matter.
Ultimately, the MRP issued a unanimous opinion that Dr. Majors had properly obtained informed consent from Jimerson for the hysterectomy and, further, had not deviated from the standard of care in his treatment of her. Subsequently, Jimerson filed a petition for damages in the trial court. Dr. Majors requested his exception of prescription be reset for hearing, and in the alternative, summary judgment. After a hearing, the trial court granted the exception of prescription, dismissing Jimer-son’s claim with prejudice. She now appeals the judgment of the trial court.
DISCUSSION
Jimerson sets forth five assignments of error all related to the granting of the exception of prescription. Jimerson generally argues the trial court erred in granting the exception of prescription and dismissing her petition for damages. More *655 specifically, she argues that the trial court erred in not finding the continuing treatment doctrine applied, not finding the discovery Rrule applied to suspend prescription and not referring the exception to the merits of the case. Here, the alleged malpractice is that Dr. Majors performed the surgery without first attempting more conservative measures. Jimerson argues that she did not consent to the surgery, specifically because Demerol, a pain medication, was administered to her one hour before she signed an informed consent form, which, consequently, she does not remember signing. Jimerson claims she did not discover that the 2008 hysterectomy should not have been performed by Dr. Majors until November 10, 2009, when Dr. Pineda mentioned this to her during an office visit. She also claims that continued post-surgery treatment by Dr. Majors suspended prescription. We disagree.
The prescriptive period for medical malpractice is set forth in La. R.S. 9:5628, in relevant part, as follows:
A. No action for damages for injury or death against any physician ... whether based in tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect; however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect.
This statute sets forth two prescriptive limits within which to bring a medical malpractice action: one year from the date of the alleged act or one year from the date of discovery, with a single qualification that the discovery rule is expressly made inapplicable after three years from the act, omission or neglect. Campo v. Correa, 2001-2707 (La. 06/21/02), 828 So.2d 502. Both the one-year and three-year limitation periods of La. R.S. 9:5628 are prescriptive. Borel v. Young, 2007-0419 (La. 11/27/07), 989 So.2d 42; Holmes v. LSU/E. A. Conway Med. Ctr., 43,662 (La. App. 2d Cir. 10/22/08), 997 So.2d 605, 608.
The prescriptive period in medical malpractice claims will not begin to run at the earliest possible indication that a patient may have suffered some wrong. Guitreau v. Kucharchuk, 1999-2570 (La. 05/16/00), 763 So.2d 575. Rather, in order for the prescriptive period to commence, the plaintiff must be able to state a cause of action—both a wrongful act and resultant damages. Id.; In re Med. Review Panel ex rel. Rachal, 48,984 (La.App. 2d Cir. 06/25/14), 144 So.3d 1199, 1203, writ denied, 2014-1887 (La. 11/14/14), 152 So.3d 886. The law of prescription does not require that the patient be informed by a medical practitioner or an attorney of possible malpractice before the prescriptive period begins to run. Dixon v. Louisiana State Univ. Med. Ctr., 33,036 (La.App. 2d Cir. 01/26/00), 750 So.2d 408, writ denied, 2000-0627 (La. 04/20/00), 760 So.2d 350.
A health care provider against whom a claim has been filed before a MRP may raise the exception of prescription in a court of competent jurisdiction and proper venue at any time without need for completion of the review process by the MRP. La. R.S. 40:1299.47(B)(2)(a). The plea of prescription must be specifically pleaded and may not be supplied by the court. La. C.C.P. art. 927(B); Carter v. Haygood, 2004-0646 (La. 01/19/05), 892 So.2d 1261.
On the trial of the prescription exception pleaded at or prior to the trial of the case, evidence may be introduced to support or controvert any of the objections *656 pleaded, when the grounds thereof do not appear from the petition. La. C.C.P. art. 931; Holmes, supra. The general rule regarding the exceptor’s burden of proof as stated in Campo, supra, is that “a petition IfiShould not be found prescribed on its face if it is brought within one year of the date of discovery and facts alleged with particularly in the petition show that the patient was unaware of malpractice prior to the alleged date of discovery, and the delay in filing suit was not due to willful, negligent, or unreasonable action of the patient.” Id. at 509.

Discovery Rule

Jimerson argues the discovery rule suspended prescription because she did not learn until November 2009 that the surgery should not have been performed. Jimerson claims that the post-surgery complications did not put her on notice that Dr. Majors negligently performed a hysterectomy, because it is the fact that the hysterectomy was performed at all, not the manner in which it was performed, that is medical malpractice. We disagree.
Ordinarily, the exceptor bears the burden of proof at the trial of the peremptory exception, but when it appears on the face of the petition that prescription has accrued, the plaintiff must allege and prove facts indicating that the injury and its causal connection were not apparent or discoverable until within the year before the suit was filed. Carter, supra; Abbott v. La. State Univ. Med. Ctr. Shreveport, 35,-693 (La.App. 2d Cir. 02/27/02), 811 So.2d 1107, 1111, writ denied, 2002-0952 (La. 05/31/02), 817 So.2d 104.
Under the discovery rule, prescription begins when a plaintiff obtains actual or constructive knowledge of facts indicating to a reasonable person that he or she is the victim of a tort. Campo, supra. A prescriptive period begins to run even if the' injured party does not have actual knowledge of facts that would entitle him to bring a suit, as long as he has constructive knowledge of such facts. Id. Constructive knowledge is “whatever notice is enough to excite attention and put the injured person on guard and call for | (¡inquiry.” Id. at 510. The ultimate issue in determining constructive knowledge is the “reasonableness of the patient’s action or inaction, in light of his education, intelligence, the severity of the symptoms, and the nature of the defendant’s conduct.” Id. at 511; Watson v. Glenwood Reg’l Med. Ctr., 49,661 (La.App. 2d Cir. 04/15/15) 163 So.3d 817, 823-24, writ denied, 2015-0945 (La. 08/28/15), 176 So.3d 404.
Here, the petition on its face has prescribed; therefore, Jimerson had the burden to show that prescription was suspended because she lacked actual or constructive knowledge of the alleged malpractice. To determine if Jimerson lacked constructive knowledge of the possible malpractice the trial court considered her specialized education. Jimerson is a registered nurse by profession and worked in the labor and delivery unit at Willis-Knighton South Hospital during the time immediately surrounding her hysterectomy surgery. Following her surgery, Jimerson’s symptoms continued to be severe and she claims she was advised by several physicians that she was suffering from post-surgery complications.
In granting Dr. Majors’ exception, the trial court concluded that Jimerson’s entire argument for application of the discovery rule hinged on her self-serving hearsay statement of what she claimed Dr. Pineda told her; therefore, the trial court declined to consider the hearsay statement as evidence. In its oral reasons for judgment, the trial court stated:
*657 She went to at least four other specialists, and in this case a urologist, Dr. Gomelsky, who told her, according to her deposition, approximately three weeks after surgery, which took place August 19, 2008, that her complications were related to her hysterectomy. That should tell a person, certainly a healthcare provider and someone who is a registered nurse ... who works in a hospital setting, and the Court is of the opinion she knew or should have known ... that a complication has taken place in this matter that could have been medical 17malpractice, and should have investigated the matter at that time. But additionally, there is absolutely nothing in the record other than the plaintiffs statement supporting that Dr. Pineda told her November 10 of 2009 that the hysterectomy should not have been performed.
The trial court further pointed out that after Dr. Pineda allegedly alerted Jimer-son that the hysterectomy should not have been performed, she waited almost another full year from the date of alleged discovery to file her action. It also noted that Jimerson could have sought a second opinion on her situation at any time—she did not lack access to medical treatment or the knowledge necessary to understand her medical condition.
Here, the trial court was within its discretion in determining that a reasonable person with Jimerson’s education and intelligence would have been put on notice under these circumstances long before the office visit with Dr. Pineda. From August 2008 to June 2009, Jimerson made 24 visits to other specialists. In her deposition, Jim-erson stated that three weeks after the hysterectomy, she was informed by Dr. Alexander Gomelsky, a specialist in urology, that her current condition was due to complications from the hysterectomy surgery. She also stated that Dr. Charles Byrd, specialist in general surgery, whom she saw before Dr. Pineda, also told her Dr. Majors did something wrong. However, none of these statements are substantiated. Jimerson had ample opportunity to take the depositions of Dr. Pineda and Dr. Byrd or obtain affidavits confirming those alleged statements. However, she did neither. Further, Jimerson’s medical records from Dr. Pineda do not contain the alleged statement relied on by her.
The trial court was not manifestly erroneous in not crediting the hearsay testimony of Jimerson and finding that she failed to carry her evidentiary burden. Based on the record before us, Jimerson did not prove |sthe discovery rule is applicable in this instance, and this assignment of error has no merit.

Continuous Treatment Doctrine

In another assignment of error, Jimerson claims it was not until she left Dr. Majors’ care and sought a second opinion from Dr. Pineda that she realized a hysterectomy should not be performed on a patient as young as she was at the time. Jimerson argues that as a longtime patient of Dr. Majors she trusted him and followed his treatment plan. Jimerson claims that because she continued to be treated by Dr. Majors until October 2009, the continuous treatment doctrine suspended prescription of her action against him. We disagree.
Prescription is suspended when there is a continuation of a special relationship in the providing of services or continued reliance on that relationship. In re Med. Review Panel of Moses, 2000-2643 (La. 05/25/01), 788 So.2d 1173. This is because the special relationship of trust might hinder a patient’s inclination to sue. Taylor v. Giddens, 618 So.2d 834 (La. 1993); Nichols v. Patwardhan, 48,170 (La. App. 2d Cir. 06/26/13), 120 So.3d 322, 325. The continuing treatment rule requires a *658 plaintiff to establish the existence of (1) a continuing treatment relationship with the physician, which is more than perfunctory, during which (2) the physician engaged in conduct which served to prevent the patient from availing herself of her cause of action, such as attempting to rectify an alleged act of malpractice. Carter, supra at 1271. The continuous treatment rule is within a category of the contra non valen-tem rules, which “allow the courts to weigh the equitable nature of the circumstances in each individual case to determine whether prescription will be tolled.” Id. at 1268.
|9In the instant matter, Jimerson argues that Dr. Majors continued to refer her to other specialists in an attempt to make her infer that her situation was the result of some other organ system or some other problem other than the hysterectomy. The trial court found that this was not the case stating, “Dr. Majors referred Ms. Jimer-son to multiple experts in this matter ... she had the ability to consult, on her own, other physicians, and she in fact, did consult another expert and specialist in this matter ... and [this matter] is clearly distinguishable from the Carter case.”
In Carter, supra, the defendant, a dentist, was the only medical professional treating the plaintiff and he refused to give her medical records to her, representing that he would fix the problem he caused. After unsuccessfully correcting his mistake, the dentist suddenly severed the doctor-patient relationship leaving the patient with ill-fitting partial dentures. In the Carter case it was clear that the dentist had taken deliberate steps to prevent the patient from seeking the opinion of another professional; thus, preventing her from availing herself of her cause of action.
Here, Dr. Majors treated Jimerson for over three years before he recommended a hysterectomy. According to Jimerson’s medical records and Dr. Majors’ deposition, the possibility of a hysterectomy had been discussed in July 2008, a month before the surgery was performed. Medical records and deposition testimony also show discussion of other conservative treatment, such as birth control, which Jimerson declined to attempt. In her deposition, Jimerson explained her histoiy of pelvic pain, her decision to undergo sterilization, and her constant admits to the emergency room for pelvic pain. She also described years of dependence on pain medications for her pelvic pain, which were not adequately ameliorating her issues.
110Evidence presented by Jimerson at the hearing, did not show that Dr. Majors took any steps to prevent Jimerson from seeking a second opinion, or any conduct which served to prevent her from availing herself of her cause of action. To the contrary, the evidence shows he encouraged her to seek the opinions of other physicians and specialists.
At the time the hysterectomy was performed, Jimerson was a registered nurse on the labor and delivery unit at Willis-Knighton South Hospital. In addition to her education, she had ample access to medical knowledge above and beyond the average woman. Jimerson could have sought a second opinion before the hysterectomy was performed. Her medical records show that she and Dr. Majors discussed the option of a hysterectomy to address her pelvic pain issues in July 2008, a month before the surgery was performed. Any reasonable woman understands the gravity of undergoing a hysterectomy procedure, especially one with Jimerson’s specialized knowledge of medical procedures and personal experience with medical decisions, such as her sterilization a year previous to the hysterectomy.
*659 Nothing in this record indicates that Dr. Majors in any way abused the physician-patient relationship so as to prevent Jim-erson from discovering the alleged malpractice of performing a hysterectomy on a 24-year-old patient or without first attempting more conservative treatment. Based on this record, we find the trial court was not manifestly erroneous in weighing the equitable nature of the circumstances of this case. This assignment of eiTor has no merit.
| ^Reference to the Merits
In another assignment of error, Jimerson argues that the trial court erred by not referring the exception of prescription to the merits of the case. Jimerson contends that the fact-intensive nature of the question of prescription in this case necessitates a trial on the merits, arguing that testimony and evidence exist to sufficiently defeat the exception of prescription. We find these facts have been considered by the trial court; therefore, we disagree.
Louisiana Code of Civil Procedure article 929 states:
A. The declinatory exception, the dilatory exception, and the peremptory exception when pleaded before or in the answer shall be tried and decided in advance of the trial of the case.
B. If the peremptory exception has been filed after the answer, but at or prior to the trial of the case, it shall be tried and disposed of either in advance of or on the trial of the case. If the peremptory exception has been pleaded after the trial of the case, the court may rule thereon at any time unless the party against whom it has been pleaded desires and is entitled to introduce evidence thereon. In the latter event, the peremptory exception shall be tried specially.
The Louisiana Supreme Court has interpreted article 929 together with La. C.C.P. art. 1001, which supplies the delay for filing an answer, to mean that a peremptory exception pleaded before an answer must be scheduled for trial in advance of the trial on the merits, but that the trial court has discretion in deciding the trial of the exception, including referring the exception to the merits in appropriate cases. Short v. Griffin, 1995-0680 (La. 06/16/95), 656 So.2d 635, 636. The principal purpose of article 929, with respect to peremptory exceptions, is to prevent a defendant from employing dilatory tactics by filing a peremptory exception after the answer and demanding a trial of the exception in order to delay the trial on the merits. Id. The | ^Louisiana Supreme Court has recognized the trial court’s discretion to refer to the merits of the case when ruling on a peremptory exception as being a function of judicial efficiency. Id.
Here, the trial court allowed Jimerson to testify at the hearing on Dr. Majors’ initial exception of prescription. It declined to rule on Dr. Majors’ exception at the initial hearing; instead, it allowed the MRP process to continue and additional discovery to be conducted. After the MRP returned an opinion, Jimerson filed a petition for damages. Dr. Majors answered and requested summary judgment predicated on the fact that, at the time of answering, Jimerson could not prove all the elements of her malpractice claim, because she did not disclose an expert to testify on her behalf. Jimerson then requested, and was granted, more time for discovery over Dr. Majors’ objection.
The purpose of the trial court’s discretion to refer to the merits of the case when ruling on a peremptory exception is a function of judicial efficiency intended to prevent unnecessary delay. The only delay in this instance has been caused by Jimerson missing deadlines and requesting additional time for discovery. Jimerson was contin *660 uously delinquent on the deadlines to move the MRP process forward, causing a delay of almost four years. The trial court granted Jimerson’s requests for additional time, and allowed her a full and fair opportunity to conduct discovery and present all her evidence.
The trial court allowed Jimerson to present the merits of her case against Dr. Majors through pleadings and during the hearing on the exception of prescription. In granting the exception of prescription, the trial court explained the facts on which it relied to determine that prescription 11sbarred Jimerson’s action and that no exception existed to suspend the running of prescription. We find the trial court has considered the merits of this case and was within its discretion in doing so; therefore, this assignment of error is without merit.
CONCLUSION
For the foregoing reasons, we affirm the judgment of the trial court sustaining the exception of prescription in favor of Jake Majors, M.D., and dismissing the claim of Kimberly Jimerson with prejudice. All costs of this appeal are assigned to Jimer-son.
AFFIRMED.