Judgment rendered April 13, 2022.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 54,202-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

KATRINA SYLVAN and                          Plaintiffs-Appellants
ANTHONY JOHNSON

versus

BRFHH MONROE, LLC d/b/a                      Defendants-Appellees
UNIVERSITY HEALTH,
SHREVEPORT, LLC; UNIVERSITY
HEALTH SHREVEPORT; SHILPADEVI
S. PATIL; MATTHEW PEDRAM BRAL;
RACHAEL WOLFSON; AHMED B.
ZAIDI; JOHNATHAN JOHNSON, RN;
ANDREW PRICE, RN; AND MEAGAN
SPARKS, RN

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 610,051

Honorable Craig Owen Marcotte, Judge

* * * * *

THE LAW OFFICES OF                  Counsel for Appellants,
KATRINA R. JACKSON                  Katrina Sylvan and
By: Katrina R. Jackson              Anthony Johnson

PETTIETTE, ARMAND,                  Counsel for Appellees,
DUNKELMAN, WOODLEY,                 BRFHH Shreveport,
BYRD & CROMWELL, L.L.C.LLC;         LLC; University Health
By: Lawrence W. Pettiette, Jr.      Shreveport, LLC;
    Rendi B. Wiggins                University Health
                                    Shreveport; Jonathan
                                    Johnson, RN; Andrew
                                    Price, RN; and Meagan
                                    Sparks, RN

* * * * *

Before MOORE, COX, and STEPHENS, JJ.

**COX, J.**

This appeal arises from the First Judicial District Court, Caddo Parish, Louisiana. Katrina Sylvan ("Ms. Sylvan") and Anthony Johnson (collectively "Appellants") appeal a judgment that sustained an exception of prescription and dismissed, with prejudice, their claim of medical malpractice arising from the alleged negligent care and treatment received by their mother, Eula Thompson (the "Decedent"), at University Health Shreveport. For the reasons expressed, we affirm.

## FACTS

On August 8, 2018, Appellants, through the succession of the Decedent, filed a medical malpractice complaint for the alleged negligent care rendered to the Decedent from July 5, 2017, until her death on July 18, 2017. In their petition, Appellants stated that on July 5, 2017, the Decedent was admitted to University Health for a neurosurgical procedure to remove a mass from her posterior upper medullae. Appellants stated that after the operation the Decedent "could speak and was aware." On July 14, 2017, a nurse informed the Appellants that the Decedent needed a tracheotomy ("trach") and that the tube would be implanted the next day.

On July 16, 2017, Appellants noticed that the Decedent's health declined. The following morning, a nurse informed the Appellants that the Decedent's trach needed to be replaced that day because it was "too large and [allowed] too much air to [get] in." Appellants noted that although the new trach was in the Decedent's room that morning, the tube had not been replaced that evening as the nurse advised. On July 18, 2017, Appellants were informed that the Decedent passed away early that morning. Appellants alleged that after the mass was removed, the neurological

department breached the standard of care regarding the placement, assessment, and monitoring of the Decedent's trach, resulting in hypoxia and ultimately the Decedent's death.

On July 20, 2018, Appellants filed a petition for damages against BRFHH Shreveport, LLC D/B/A University Health Shreveport, LLC; University Health Shreveport; Shilpadevi S. Patil; Matthew Pedram Bral; Rachael Wolfson; Ahmed B. Zaidi; Jonathan Johnson, RN; Andrew Price, RN; and Meagan Sparks, RN[1] (collectively "Appellees"), for the alleged negligent care of the Decedent. On September 19, 2018, Appellees filed a peremptory exception of prescription, asserting that the Appellants' claim prescribed because it was filed more than one year after the Decedent's death. In opposing the motion, Appellants argued that under the doctrine of *contra non valentem agere nulla currit praescriptio*, their claim was timely because they did not become aware of the negligence until two to three months after the Decedent passed. A hearing on the exception was held on September 8, 2020.

Ms. Sylvan testified that the Decedent was admitted to University Health for 14 days following the removal of a tumor. Sometime after the neurological department removed the mass, the Decedent had a trach implanted. Ms. Sylvan testified that on July 17, 2017, she noticed a new trach in the Decedent's room and that a nurse informed her that the Decedent's original trach needed to be replaced that day because it was too large. Ms. Sylvan testified that when she visited the Decedent that evening,

---

[1]For clarification, we note that BRFHH Monroe, LLC, is listed in the case caption; however, the actual Appellee entity in this matter is BRFHH Shreveport, LLC. Further, the first name of Appellee Jonathan Johnson, RN, is misspelled in the case caption.

her only concern was that the Decedent's trach had not been replaced. She stated that a nurse only informed her that the trach was not replaced because the Decedent's health had deteriorated. The Decedent passed away the following morning.

Ms. Sylvan stated that two to three months after the Decedent passed away, a nurse informed the Decedent's siblings that the Decedent died because the wrong sized trach was implanted. She testified that this was the first time she realized that the hospital did something wrong because she was never informed that the Decedent's health deteriorated because the wrong sized trach was implanted. Ms. Sylvan stated that she relied on the doctors' and nurses' statements that they had done everything they could for the Decedent.

At the close of testimony, the district court, in granting the exception, stated, ". . . this matter has prescribed or would have prescribed on July 18, 2018. And it is my understanding [that] this matter was filed in August of 2018, more than one year after the negligent act occurred. And therefore, the [c]ourt finds that this matter has prescribed and sustains the [e]xception of [p]rescription." This appeal followed.[2]

## DISCUSSION

In their assignments of error, Appellants argue that the trial court erred in granting the Appellees' exception of prescription. Appellants contend that under the doctrine of *contra non valentem,* their claim was

---

[2] After the district court granted the exception of prescription, Appellants filed a notice to seek supervisory review with this Court, which found that the notice was timely as a motion for devolutive appeal, granted the writ, and remanded the matter for perfection as an appeal.

timely because it was filed within one year from their discovery of any negligent conduct attributable to the Decedent's death.

*Standard of Review*

Generally, the standard of review of a judgment regarding an exception of prescription will depend on whether evidence was introduced during the hearing of the exception. *Mitchell v. Baton Rouge Orthopedic Clinic, L.L.C.*, 21-00061 (La. 10/10/21), ---So. 3d---, 2021 WL 5860855; *Wells Fargo Fin. La, Inc. v. Galloway*, 17-0413 (La. App. 4 Cir. 11/15/17), 231 So. 3d 793. If no evidence is presented to support or controvert the exception, the manifest error standard of review does not apply, and the appellate court's role is to determine whether the trial court's ruling was legally correct. *Cook v. Rigby*, 19-1475 (La. App. 1 Cir. 11/25/20), 316 So. 3d 482.

Conversely, when evidence is introduced during the hearing on an exception of prescription, the trial court's findings of fact are reviewed under the manifest error standard of review. *Mitchell*, *supra*; *Carter v. Haygood*, 04-0646 (La. 1/19/05), 892 So. 2d 1261; *In re Med. Review Panel Proceedings for Claim of Ferguson v. Howell*, 53,139 (La. App. 2 Cir. 11/20/19), 284 So. 3d 1231, *writ granted on other grounds*, 19-02033 (La. 6/22/21), 318 So. 3d 34. However, when there is no dispute regarding material facts and only the determination of a legal issue, then appellate courts apply a de novo standard of review and no deference is afforded to the trial court's legal conclusions. *Mitchell*, *supra*.

In the present case, testimonial evidence was introduced into the record at the hearing on the exception of prescription. Therefore, a manifest error standard of review is applied to this case.

4

*Prescription*

The prescriptive period for medical malpractice claims is governed by La. R.S. 9:5628(A) which provides, in pertinent part, as follows:

> No action for damages for injury or death against any physician. . . whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of discovery of the alleged act, omission, or neglect; however, even as to claims filed within one year from the date of discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect.

This statute requires that such claims be brought within one year of the alleged act, omission, or neglect, or within one year from the date of discovery. La. R.S. 9:5628(A). Additionally, even as to claims filed within one year of the discovery of the alleged malpractice, all such claims must be filed, at the latest, within three years from the date of the alleged act, omission, or neglect. *Id.* Ordinarily, the party pleading prescription bears the burden of proving that the claim has prescribed; however, when prescription is evident on the face of the pleadings, the burden shifts to the plaintiff to show that the action has not prescribed. *Mitchell*, *supra*; *Jimerson v. Majors*, 51,097 (La. App. 2 Cir. 1/11/17), 211 So. 3d 651; *Cooksey v. Heard*, *McElroy & Vestal*, *L.L.P.* 44,761 (La. App. 2 Cir. 9/23/09), 21 So. 3d 1011.

Appellants argue that, with respect to medical malpractice actions, prescription begins to run from the date the injured party knew or should have known of the negligence. In this case, the Appellants assert that they were not aware of any negligent conduct until two to three months after the Decedent passed away when a nurse informed the Decedent's siblings that the wrong sized trach was implanted. In contrast, Appellees argue that since

5

the claim was filed on August 8, 2018, and the date of the Decedent's death was July 18, 2017, the Appellant's complaint prescribed because it was filed more than one year after the Appellants had constructive notice that the Decedent might have been a victim of medical negligence; therefore, the burden to show that the claim was not prescribed shifted to the Appellants. We agree.

According to the record, and as correctly noted by the trial court, any knowledge regarding the alleged negligence was known or should have been known on July 18, 2017. Ms. Sylvan was informed on July 17, 2017, that the wrong sized trach was initially implanted and that it would have to be replaced with a smaller trach, which was never done. Appellants testified that the day after the Decedent's initial procedure, she "could speak and was aware," and recognized that the Decedent's health declined after the trach was implanted.

As such, we cannot say that the trial court was manifestly erroneous in its finding that the Appellants had sufficient knowledge, prior to the running of prescription, that should have prompted further inquiry as to the potential malpractice. Accordingly, this assignment of error lacks merit.

Appellants alternatively argue that under the doctrine of *contra non valentem*, the peremptive period of La. R.S. 9:5628(A) does not apply to the facts in this case. La. R.S. 9:5628(A) specifies that medical malpractice claims must be brought within one year of the alleged act, omission, or neglect, or within one year from the date of the discovery. Even as to claims filed within one year of the discovery of the alleged malpractice, all such claims must be filed, at the latest, within three years from the date of the alleged act, omission, or neglect. *Id.*

Prescriptive statutes are strictly construed in favor of maintaining a plaintiff's cause of action. *In re Med. Review Panel of Mason Heath*, 54,020 (La. App. 2 Cir. 8/11/21), 326 So. 3d 347, *writ granted*, 21-01367 (La. 12/721), 328 So. 3d 409, *citing*, *Correro v. Ferrer*, 16-0861 (La. 10/28/16), 216 So. 3d 794. To "soften the harshness of prescriptive statutes," the jurisprudentially created exception to prescription, *contra non valentem*, was adopted. *Carter*, *supra*. This exception generally provides that "prescription does not run against a person who could not bring his suit." *Id*. Our courts recognize four categories of *contra non valentem* that prevent the running of prescription:

> (1) Where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action; (2) where there was some condition coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting; (3) where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; and (4) where the cause of action is not known or reasonably knowable by the plaintiff, even though this ignorance is not induced by the defendant.

*Plaquemines Parish Comm. Council v. Delta Dev. Co.*, 502 So. 2d 1034 (La. 1987); *Carter*, *supra*.

Appellants argue that the third and fourth categories apply to this case. Specifically, Appellants argue that the Decedent's death did not put them on notice that the Appellees were negligent primarily because statements from doctors, nurses, and staff of the Appellee facility delayed the Appellants from having any reasonable knowledge regarding this action. Appellants contend that they initially believed the Decedent's death stemmed from the removal of the tumor, in part because a nurse informed Ms. Sylvan that the Decedent's failing health prevented the trach from being replaced.

7

Moreover, Appellants argue that because a doctor told Ms. Sylvan that he and the other staff did everything they could for the Decedent, the Appellants were made to believe that the Appellees were not responsible for the Decedent's death. We disagree.

After a thorough review of the record, we find that neither of the two asserted grounds for the application of *contra non valentem* is applicable in this case. First, the Louisiana Supreme Court has held that the third category of *contra non valentem* is implicated in situations in which "an innocent plaintiff has been lulled into a course of inaction in the enforcement of his right by reason of some concealment or fraudulent conduct on the part of the defendant, or because of his failure to perform some legal duty whereby plaintiff has been kept in ignorance of his rights." *Carter*, *supra*.

Here, there is no indication that any employee of the Appellee facility took any action that effectually prevented the Appellants from discovering the alleged malpractice of placing the wrong sized trach in the Decedent. Although Ms. Sylvan testified that a nurse informed her that the second smaller trach could not be replaced because the Decedent's health declined and that a doctor told her that he did everything he could for the Decedent, this does not bar the Appellants from discovering that an act of negligence occurred because of the wrong sized trach. There is no evidence in the record that any member of the Appellee facility assured the Appellants that the Decedent's health would recover once the new trach was implanted or even that the cause of the Decedent's decline in health stemmed from the removal of the tumor.

Our jurisprudence reflects that the law of prescription does not require that the patient be informed by a medical practitioner of possible malpractice

before the prescriptive period begins to run. *Jimerson*, *supra; Dixon v. Louisiana State Univ. Med. Ctr.*, 33,036 (La. App. 2d Cir. 01/26/00), 750 So. 2d 408, *writ denied*, 00-0627 (La. 04/20/00), 760 So. 2d 350. The prescriptive period for a medical malpractice cause of action arises upon the occurrence of the injury when the damages are immediately apparent. *Mitchell*, *supra*.

A nurse directly informed the Appellants that the wrong sized trach was implanted into the Decedent and that it would have to be replaced that same day. The nurse further informed the Appellants that the trach could not be replaced because of the Decedent's deteriorating health. The nurse's failure to specifically state that the Decedent's decline in health, and ultimate death, was caused because the wrong sized trach was implanted did not prevent the Appellants from availing themselves of their cause of action. Accordingly, we cannot say that the Appellees' failure to mention their fault regarding the implantation of the trach rises to the level of fraud, misrepresentation, concealment, or ill practice.

Finally, prescription is suspended under the fourth category of *contra non valentem* when "some cause of action is not known or reasonably knowable by the plaintiff" and the plaintiff's ignorance of his cause of action is not attributable to his own willfulness or neglect because he is deemed to know what he could have learned by reasonable diligence. *Edwards v. Alexander*, 42,000 (La. App. 2 Cir. 6/6/07), 960 So. 2d 336, *writ denied,* 07-1317 (La. 9/28/07), 964 So. 2d 371. Under the discovery rule, prescription begins to run when a plaintiff obtains actual or constructive knowledge of facts indicating to a reasonable person that he or she is the victim of a tort. *Campo v. Correa*, 01-2707 (La. 6/21/02), 828 So. 2d 502; *Jimerson*, *supra*.

9

A prescriptive period begins to run even if the injured party does not have actual knowledge of facts that would entitle him to bring a suit, as long as he has constructive knowledge of such facts. *Id.*

Constructive knowledge is "whatever notice is enough to excite attention and put the injured person on guard and call for inquiry." *Id.*; *Heath, supra.* The ultimate issue in determining constructive knowledge is the "reasonableness of the patient's action or inaction, in light of his education, intelligence, the severity of the symptoms, and the nature of the defendant's conduct." *Id.* Although the record in this case does not present or reference information regarding the Appellants' ages, inexperience, lack of education, or degree of reliance on healthcare providers, it does reflect that there was a reasonable basis to excite the Appellants' curiosity that employees of the Appellee facility were negligent.

The record demonstrates that the Appellants were aware that on July 16, 2017, the Decedent's health began to decline after her trach was implanted. The following day, a nurse informed the Appellants that the wrong sized trach was implanted and would have to be replaced; however, the nurse stated later that the trach could not be replaced because of a decline in the Decedent's health. Because the Appellants were informed that the wrong sized trach was implanted, and thereafter, the Decedent's health declined and she eventually passed away, the Appellants had sufficient information to incite curiosity by July 18, 2018.

Therefore, because the Appellants' complaint was filed in August 2018, more than one year after the Appellants knew or should have known of the medical malpractice claim, the matter was untimely filed.

## CONCLUSION

For the reasons expressed, the judgment is affirmed.  Costs of this appeal are cast against the Appellants.

**AFFIRMED**.