Judgment rendered April 23, 2025.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 56,213-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

IN RE:  MEDICAL REVIEW PANEL                    Plaintiffs-Appellants
OF CLARENCE NOBLE, JR., BETTY
JEAN JOHNSON, BEVERLY JEAN
CULPEPPER, CYNTHIA NOBLE,
BRUCE NOBLE AND DOROTHY
ANN SCOTT

* * * * *

Appealed from the
Twenty-Sixth Judicial District Court for the
Parish of Bossier, Louisiana
Trial Court No. 162,055

Honorable Michael Nerren, Judge

* * * * *

DAVIS LAW OFFICE, LLC                           Counsel for Appellants
By:  S.P. Davis
       Kharmen K. Davis-Taylor

LIZ MURRILL                                     Counsel for Appellee,
Attorney General                                Louisiana Department of
                                                Justice, Veterans Affairs
                                                d/b/a Northwest Louisiana
                                                Veterans Home

LAKEISHA JOHNSON
TIMOTHY WYNN
PHYLLIS E. GLAZER
Assistant Attorneys General

* * * * *

Before PITMAN, STEPHENS, and ROBINSON, JJ.

**ROBINSON, J.**

Plaintiffs, Clarence Noble, Jr. ("Noble"), Betty Jean Johnson, Beverly Jean Culpepper, Cynthia Noble, Bruce Noble, and Dorothy Ann Scott (collectively referred to as "Plaintiffs"), filed a medical malpractice action against Defendant, Louisiana Department of Veterans Affairs d/b/a Northwest Louisiana Veterans Home ("Veterans Home" or "Defendant") on February 6, 2020, and an amended complaint on June 7, 2021. In their petitions, they allege Defendant's negligence related to the care of Noble, now deceased, during his stay at the Veterans Home from January 28, 2018, to May 8, 2020, specifically in connection with Noble's decubitus ulcer and right femoral fracture.

Defendant filed a peremptory exception of prescription on May 10, 2021. Plaintiffs opposed the exception, alleging the negligence constituted a "continuous tort." Following a hearing on June 29, 2021, the trial court granted Defendant's exception and a judgment was signed on July 22, 2021. Plaintiffs appealed, but this Court found that there was a lack of appellate jurisdiction because the judgment was a partial judgment and not designated a final judgment. The appeal was dismissed and remanded to the trial court for complete disposition of the claims. An amended judgment was filed May 13, 2024, and the Plaintiffs appeal.

For the following reasons, we AFFIRM the trial court's judgment.

### FACTS AND PROCEDURAL HISTORY

The background in this matter was set forth in detail in this Court's earlier opinion in *In re Noble*, 54,642, pp. 1-2 (La. App. 2 Cir. 9/21/22), 349 So. 3d 101, 101-102:

On February 10, 2020, Plaintiffs filed a complaint for medical malpractice. They alleged that Noble developed a stage IV decubitus ulcer and sustained a femoral fracture while living at the Veterans Home. They argued that the Veterans Home negligently failed to prevent Noble from acquiring the ulcer and sustaining the fracture, which caused him unnecessary pain, suffering and medical treatment.

On May 10, 2021, the Veterans Home filed a peremptory exception of prescription. It alleged that Noble began treatment for the ulcer on June 30, 2018; Plaintiffs learned of the ulcer on August 6, 2018; and Plaintiffs filed the complaint on February 10, 2020. It argued that because Plaintiffs filed their complaint more than one year after the discovery of the alleged act, omission or neglect, this claim prescribed and should be dismissed.

On June 21, 2021, Plaintiffs filed an opposition to the exception. They argued that this claim had not prescribed because the Veterans Home continuously breached its standard of care from June 30, 2018, to April 18, 2019, and that prescription was suspended during this time. They contended that prescription did not begin to run until April 18, 2019, i.e., the date of his last treatment, or May 8, 2020, i.e., the date of his discharge from the Veterans Home. They also argued that their claim regarding Noble's femoral fracture had not prescribed.

On June 25, 2021, the Veterans Home filed a reply. It contended that Plaintiffs cannot establish a continuous tort because Noble was transferred to another facility in August 2018 for treatment of the ulcer. It also noted that its exception of prescription did not include Plaintiffs' claim regarding Noble's femoral fracture.

A hearing was held on June 29, 2021. The trial court determined that when Noble was transferred to another facility for treatment of the ulcer in August 2018, prescription began to run; and, therefore, the February 2020 complaint was not timely filed.

On July 22, 2021, the trial court filed a judgment and granted the exception of prescription. It found that Plaintiffs possessed sufficient knowledge to begin the prescriptive period on August 20, 2018, more than one year prior to the filing of their complaint on February 10, 2020. Pursuant to La. R.S. 9:5628, the trial court dismissed with prejudice Plaintiffs' claim concerning the ulcer.

On September 20, 2021, Plaintiffs filed a motion for devolutive appeal.

DISCUSSION

***Burden of Proof***

Ordinarily, the party pleading prescription bears the burden of proving the claim has prescribed. *Carter v. Haygood*, 04-0646 (La. 1/19/05), 892 So. 2d 1261; *Campo v. Correa*, 01-2707 (La. 6/21/02), 828 So. 2d 508; *In re: Medical Review Panel for Claim of Moses*, 00-2643 (La. 5/25/01), 788 So. 2d 1173; *Williams v. Sewerage & Water Bd. of New Orleans*, 611 So. 2d 1383 (La. 1993). However, when the face of the petition reveals that the plaintiff's medical malpractice claim has prescribed, the burden shifts to the plaintiff to demonstrate prescription was suspended or interrupted. *Id*. A petition is not prescribed on its face if it is filed within one year of discovery and particularly alleged facts show the patient was unaware of malpractice before that date, so long as the filing delay was not willful, negligent, or unreasonable. *Campo*, *supra*. Whether the complaint is prescribed on its face is purely a question of law, subject to *de novo* review. *Id*.; *In re Medical Review Panel of Heath*, 21-01367 (La. 6/29/22), 345 So. 3d 992; *Mitchell v. Baton Rouge Orthopedic Clinic*, L.L.C., 21-00061 (La. 10/10/21), 333 So. 3d 368. Inferences cannot be relied upon to establish that an action is not prescribed on its face; thus, to avoid the burden of proof shifting from the party moving for peremptory exception of prescription to a plaintiff, facts must be alleged with particularity to avoid such shift. *Campo*, *supra*.

Plaintiffs' complaint includes the following allegations pertinent to their claim regarding Noble's ulcer:

> 3. Petitioners avers [sic] that they are the children of [Noble] and that upon admission to defendant's facility, he had no decubitus ulcers or bed sores, nor any femoral fracture to his right leg.
>
> 4. Petitioners avers [sic] that defendants, its employees and agents negligently failed to prevent [Noble] from acquiring the severe Stage IV decubitus ulcer for which he was treated from June 30, 2018 through April 18, 2019, which caused him to suffer and sustain unnecessary pain and suffering and medical treatment.
>
> 6. Petitioners avers [sic] that defendants, its employees, and agents failed to implement and execute a preventative wound care program for [Noble] which would have prevented his decubitus ulcer (bed sore), pain, suffering, and medical treatment.

Notably, Petitioners' allegations refer to the negligent *prevention* of Noble's decubitus ulcer. Petitioners' reference to the time period during which Noble was treated for the ulcer is indicative of their knowledge of the condition during that period. They do not allege that they were unaware of the condition during the treatment or any other time frame, nor do they indicate any particular discovery date of the condition other than commencement of the treatment. Further, they do not claim that any negligent conduct occurred *during treatment*.

Petitioners' original claim was filed on February 10, 2020, approximately 19 months after the date on which Noble's treatment commenced, June 30, 2018. The malpractice claim relating to the ulcer was not filed within one year of discovery. Because the facts described in the complaint were not alleged with sufficient particularity to avoid the burden of proof shifting from the Defendant to the Plaintiffs, the Plaintiffs' claim is prescribed on its face and they resultingly carry the burden of proving that the claim is *not* prescribed by way of suspension or interruption of the prescriptive period.

*Standard of Review*

While review of whether the complaint is prescribed on its face is a question of law subject to *de novo* review, when evidence is considered on the merits of exception of prescription and factual determinations are made, the manifest error – clearly wrong standard of review is applied. *Mitchell*, *supra*; *Carter*, *supra*; *Stobart v. State, through DOTD*, 617 So. 2d 880 (La. 1993); *LaGrange v. Schumpert Medical Ctr.*, 33,541 (La. App. 2 Cir. 6/21/00), 765 So. 2d 473. If the findings are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. *Carter*, *supra*; *Stobart*, *supra*.

Defendant argues that although it offered and introduced the record, the trial court never expressly ruled the exhibits were admitted into evidence; thus, they were not properly admitted. It refers to the Louisiana Supreme Court's holding in *Denoux v. Vessel Mgmt. Servs., Inc.*, 07-2143 (La. 5/21/08), 983 So. 2d 84, that evidence not properly and officially offered and introduced cannot be considered, even if it is physically placed in the record, and documents attached to memoranda do not constitute evidence and cannot be considered as such on appeal. Defendant further argues that since Plaintiffs failed to introduce any evidence at the hearing, they failed to prove any allegations whatsoever.

During the June 29, 2021, hearing on Defendant's exception of prescription, counsel for Defendant introduced the entire suit record into evidence. The following exchange occurred, in pertinent part:

> MS. GROZINGER: All right. I'd like to offer and introduce the entire suit record into evidence. And, Your Honor, we filed an

exception of prescription, but before I get in to -- do you want me to put my mask on?

THE COURT:  No.  I'm --

MS. GROZINGER:  Okay.

THE COURT:   -- telling the sheriff he can back off you're not gonna hand him --

MS. GROZINGER:  Oh, okay.

THE COURT:  -- anything.

MR. BAILIFF:  I thought you were gonna present something.

MS. GROZINGER:  Oh, no, Your Honor.

THE COURT:  No.  She just offered the entire record.

MS. GROZINGER:  Yes, Your Honor …

Plaintiffs' counsel did not introduce any additional evidence or testimony but simply referred to the Veterans Home records that were attached to his brief, which were included in the suit record previously introduced by Defendant.

In cases where evidence is considered by the trial court without objection, the evidence may be deemed to be tacitly admitted.  *State v. Lloyd*, 48,914 (La. App. 2 Cir. 1/14/15), 161 So. 3d 879, *writ denied*, 15-0307 (La. 11/30/15), 184 So. 3d 33; *State v. Simmons*, 00-35 (La. App. 5 Cir. 7/25/00), 767 So. 2d 860; *State v. Taylor*, 98-603 (La. App. 5 Cir. 3/10/99), 733 So. 2d 77; *State v. Lewis*, 98-447 (La. App. 5 Cir. 10/28/98), 720 So. 2d 1230.  Objections are required under La. C. Cr. P. art. 841(a), which states:

> An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. A bill of exceptions to rulings or orders is unnecessary. It is sufficient that a party, at the time the ruling or order of the court is made or sought, makes

known to the court the action which he desires the court to take, or of his objections to the action of the court, and the grounds therefor.

Failure to object to an error in a trial court at the time it is made constitutes a waiver of the right to complain of the error on appeal. *Temple v. Liberty Mutual Ins., Co.*, 330 So. 2d 891 (La. 1976). At trial, a party must make a timely objection to evidence that party considers to be inadmissible and must state the specific ground for the objection. *Harris v. Holliway Med. Clinic*, 54,697 (La. App. 2 Cir. 8/10/22), 345 So. 3d 452, *citing* La. C.C.P. art. 1635 and La. C.E. art. 103. The trial court is granted broad discretion in its evidentiary rulings, which will not be disturbed on appeal absent a clear abuse of discretion. *Id.*; *Fields v. Walpole Tire Serv., LLC*, 45,206 (La. App. 2 Cir. 5/19/10), 37 So. 3d 549, *writ denied*, 10-1430 (La. 10/1/10), 45 So. 3d 1097.

The court's reasoning in *Taylor*, *supra*, is particularly applicable. There was no ruling by the trial court formally admitting certain physical evidence offered by the state. The defendant did not make any claim as to admissibility, but rather the lack of formality in the introduction of evidence, claiming the admission was improper as a result. The Fifth Circuit stated as follows:

> At the outset, it must be noted that if no objection is made in the trial court, any error committed therein is not preserved for appellate review. In the instant case, the record does not show a defense objection to the admission of the state's exhibits into evidence or their use by the state during the trial. To the contrary, after laying a foundation the state used the exhibits, without objection, in presenting its case to the jury. The defense also used some of the exhibits in its case. The record indicates that both the state and the defense, as well as the trial court, acted as if the evidence had been admitted into evidence.

> There are no statutory or jurisprudential rules governing the formalities required when a trial court admits evidence. Traditionally, the party wishing to introduce documentary evidence would first have the evidence marked as an exhibit and lay a foundation for admission of the evidence. The proposed evidence would next be shown to the opposing attorney and then the proponent would offer the evidence to the trial court. At this point, the opponent may object to the introduction of the proposed evidence. The trial court must then rule on the objection and admit or exclude the evidence. *McCormick on Evidence*, Vol. 1, Sec. 51 at 195 (4th ed.1992).

The trial judge, by his comments, tacitly admitted a report as evidence. By failure to object to an informal procedure, the party acquiesced in admission of the evidence.

The Fifth Circuit expressed a very similar holding in *Simmons*, *supra*, finding that evidence not formally accepted, but still referred to by both parties, was deemed tacitly admitted. In addition, this Court found in *Lloyd*, *supra*, that a recorded telephone call played in court without formally being introduced into evidence was tacitly admitted, and the trial court did not err in considering it at trial, where the defendant failed to object.

In this matter, Defendant claims that the very evidence it *offered and introduced*, the entire suit record, was not properly *admitted* into evidence because the court did not *formally* accept the evidence that was produced. There is no question that the evidence was presented during the hearing, and there is no claim that the evidence is inadmissable. Its argument is simply that the method in which the court accepted the evidence was improper. Defendant fails to show that there is any formal requirement for the admission of evidence once it has been introduced when it is otherwise admissible. Further, there was no objection at any point during the hearing regarding admission of the evidence; therefore, the argument regarding

proper admission is not preserved for review.   In addition, Defendant acquiesced in admission of the evidence by seeking its introduction, as well as by relying on information throughout the record in support of its arguments.

This Court finds that the trial court's tacit admission of the suit record introduced by Defendant, and any reliance on that evidence by either Defendant or Plaintiffs in support of their respective arguments, is proper. Resultingly, since the trial court properly considered evidence on the merits of the exception of prescription and made factual determinations, the manifest error – clearly wrong standard of review is applied.

### Continuing Tort Theory

Plaintiffs contend that they meet certain exceptions to the one-year prescriptive period enumerated in La. R.S. 9:5628, one being that Defendant committed a continuing tort.  They claim that Defendant had a continuous duty to provide continuous care and treatment to Noble from the date of his admission to Veterans Home on January 28, 2018, through his discharge on May 8, 2020, and that it continually breached that duty by failing to properly and timely prevent and treat Noble for the decubitus ulcer he developed under their care.  As a result, prescription would not commence until April 18, 2019, when Defendant was no longer treating Noble's ulcer.

Plaintiffs allege that Noble's ulcer progressed from "Stage I" to "Stage IV" over the course of the treatment period, June 30, 2018, to April 18, 2019, which would appear as if the ulcer progressively worsened under Defendant's care, even considering the transfer to Promise Hospital for treatment intervention.  However, a review of the record clearly supports

that the ulcer was a minor "bed sore" upon discovery by Defendant on June 30, 2018, and had already progressed to a "Stage IV" level as of August 6, 2018, when Plaintiffs were notified of the wound. The Plaintiffs requested that Noble receive treatment at the hospital and the Veterans Home attending physician agreed. Noble was transferred on August 20, 2018, and was treated at Promise Hospital until September 19, 2018, when he was transferred back to Veterans Home. The records indicate that Noble's ulcer significantly improved during the one-month admission to Promise Hospital and continued to improve and ultimately heal while under the care of Veterans Home through April 18, 2019.

Defendant argues that Plaintiffs cannot establish their argument for a continuous tort because Noble was transferred to Promise Hospital for approximately one month for the care and treatment of his decubitus ulcer, and the transfer interrupted any continuous treatment of Noble and its duty owed, thereby defeating Plaintiffs' claim.

When damaging conduct is of a continuous nature, prescription does not begin to run until the date of the last harmful act. *Hunter v. Tensas Nursing Home*, 32,217 (La. App. 2 Cir. 10/27/99), 743 So. 2d 839, *writ denied*, 99-3334 (La. 2/4/00), 754 So. 2d 228. When the tortious conduct and resulting damage continue, prescription does not begin until the conduct causing the damage is abated. *South Central Bell Telephone Co. v. Texaco, Inc.*, 418 So. 2d 531 (La. 1982). A continuing tort is occasioned by continual unlawful acts and for there to be a continuing tort, there must be a continuing duty owed to the plaintiff and a continuing breach of that duty by the defendant. *Crump v. Sabine River Authority*, 98-2326 (La. 6/29/99), 737

So. 2d 720. However, the breach of the duty to right a wrong and make the plaintiff whole simply cannot be a continuing wrong which suspends the running of prescription, as that is the purpose of any lawsuit and the obligation of every tortfeasor. *Id.* A continuing tort is occasioned by unlawful acts, not the continuation of the ill effects of an original, wrongful act. *Id.*

Plaintiffs do not specifically allege Defendant's standard of care as it pertains to Noble's ulcer care but merely refer to the record and mention that Defendant has a "duty for continuous care and ulcer prevention." Plaintiffs also fail to allege a specific breach other than the simple fact that Noble's ulcer existed over a period of time while he was being treated by Defendant. While there may be continuous damage, Plaintiffs do not meet their burden of proving Defendant's appropriate standard of care or how it breached that duty. Even had Plaintiffs sufficiently alleged a continuous duty and breach regarding the prevention of Noble's ulcer, Defendant's alleged conduct causing the damage would have abated when Defendant transferred Noble to Promise Hospital for more aggressive treatment, especially considering that his wound began to heal during the hospitalization and continued healing under Defendant's care when Noble was transferred back to Veterans Home, ultimately resulting in full recovery of the wound.

### Contra Non Valentem, "Termination Rule"

*Contra non valentem* is an exception to prescription adopted by courts used to "soften the harshness of prescriptive statutes," generally meaning that "prescription does not run against a person who could not bring his suit." *Mitchell*, *supra*; *Carter*, *supra*. Louisiana law recognizes four

11

categories of *contra non valentem* that operate to prevent the running of prescription:

> (1) where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action; (2) where there was some condition coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting; (3) where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; and (4) where the cause of action is not known or reasonably knowable by the plaintiff, even though this ignorance is not induced by the defendant. *Id*.

The third category, the "termination rule," encompasses situations where an innocent plaintiff has been lulled into a course of inaction in the enforcement of his right by reason of some concealment or fraudulent conduct on the part of the defendant, or because of his failure to perform some legal duty whereby plaintiff has been kept in ignorance of his rights. *Id*. Under the termination rule, prescription is suspended when a special relationship in providing services continues or when the plaintiff continued to rely on that relationship. *Jimerson v. Majors*, 51,097 (La. App. 2 Cir. 1/11/17), 211 So. 3d 651.

However, the termination rule only suspends prescription when the healthcare provider misleads or covers up information that might lead the plaintiff to discover malpractice. *Carter*, *supra*. The plaintiff must show that the health care provider's subsequent conduct classifies as behavior designed to prevent the plaintiff from asserting a claim, whether it be in the form of concealment, misrepresentation, fraud, or ill practices. *Mitchell*, *supra*. Further, *contra non valentem* does not suspend prescription when a litigant is perfectly able to bring his claim but fails to do so. *Stett v. Greve*, 35,140 (La. App. 2 Cir. 2/27/02), 810 So. 2d 1203. In *LaGrange*, *supra*, the

12

plaintiff failed to defeat an exception of prescription by arguing that he did not know the full effects of his ulcer until months after he discovered it. This Court stated as follows:

> When a plaintiff has knowledge of facts strongly suggestive that the untoward condition or result may be result of improper treatment and there is no effort by the health care provider to mislead or cover up information which is available to the plaintiff through inquiry or professional medical or legal advice, then the facts and the cause of action are reasonably knowable to plaintiff. Inaction by the plaintiff for more than a year under these circumstances is not reasonable.

Plaintiffs refer to their ongoing doctor-patient relationship, but they do not specifically allege that they relied on that relationship in such a manner that at any point they had insufficient knowledge of their claims or that their inclination to sue was otherwise hindered. On the contrary, the records show that Plaintiffs were consistently and thoroughly involved in Noble's care and regularly communicated with Defendant's staff. Further, they made several allegations during interactions with the staff on at least two occasions – August 6, 2018, and September 19, 2018 – that the ulcers were related to the care Noble received from Defendant, even taking photographs of Noble's wounds and urging further assessment of Noble's wounds. Due to Plaintiffs' knowledge and their allegations of fault regarding Noble's treatment, the physician-patient relationship with Defendant did not invoke the termination rule of *contra non valentem*.

***Summary***

In its judgment granting Defendant's exception, the trial court ruled that "the plaintiffs possessed sufficient knowledge to begin the prescriptive period on August 20, 2018, more than one year prior to the filing of the

13

MRP Complaint on February 10, 2020." During the hearing, the court reasoned as follows:

> Once [Noble] was transferred out [to Promise], which is going to be the August 20[th] date, would be the date prescription began to run therefore the filing in February of 2020 would be untimely. I do disagree with counsel from the State that the June date would have been the date prescription began to run because up until he was transferred out but once -- I agree with counsel, once he was transferred to another facility for treatment of that issue my opinion that's when prescription began to run.

It is unclear on what premise the trial court makes the determination that the August 20, 2018, transfer date commences the running of prescription, whether a continuous tort theory or the *contra non valentem* termination rule. Nevertheless, either reasoning would have the same end-result. Under the continuous tort theory, the alleged negligent conduct would have abated on August 20, 2018, the date when Defendant transferred Noble to Promise Hospital for further assessment and treatment. Under the termination rule, in which the physician-patient relationship would result in insufficient knowledge of Plaintiffs' claims or would have hindered their inclination to sue, it was apparent that they had sufficient knowledge of the claims and were inclined to sue in August 2018. Therefore, we do not find the trial court's ruling that prescription commenced on August 20, 2018, resulting in the untimely filing of Plaintiffs' claim, to be clearly wrong or manifest error.

## CONCLUSION

For the foregoing reasons, we AFFIRM the trial court's judgment. All costs of this proceeding are to be assessed to Plaintiffs.

**AFFIRMED.**

14